# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1510

———————

Suzzette Williams; Angela Conner,    *

                                  *

          Appellants,        *

                                  *   Appeal from the United States

      v.                     *   District Court for the

                                  *   Western District of Missouri.

Missouri Department of Mental     *

Health; Dan Thornton, Individually   *

and in his official capacity as       *

Superintendent of the Higginsville   *

Habilitation Center, operated by the  *

Missouri Department of Mental Health, *

                                  *

          Appellees.        *

———————

Submitted: January 14, 2005
Filed: May 25, 2005

———————

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

———————

SMITH, Circuit Judge.

Suzzette Williams ("Williams") and Angela Conner ("Conner") each asserted a claim for hostile work environment under Title VII against the Missouri Department of Mental Health ("MDMH") and Dan Thornton ("Thornton"), Superintendent of the Higginsville Habilitation Center ("HHC"), which is operated by MDMH. The United

States District Court[1] for the Western District of Missouri granted summary judgment in favor of MDMH and Thornton finding that they met the requirements of the affirmative defense established in *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 807–08 (1998). Williams and Conner appeal the district court's grant of summary judgment.

## I. *Background*

Williams and Conner allege that their former temporary supervisor, Ronald Dale Miller ("Miller"), created a hostile work environment at HHC's Crestview II residential unit where they worked. Miller worked at the Crestview II Unit for several weeks in the Spring of 2000.[2] Both Williams and Conner allege that Miller asked inappropriate personal questions, exposed himself, and offensively touched Williams and Conner.[3] MDMH did not dispute that Miller committed these acts. Instead,

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[2]Miller was Williams's direct supervisor, but it is unclear whether he was Conner's supervisor. For purposes of this appeal, we assume Miller directly supervised Conner.

[3]On one occasion, Miller approached Williams and pulled down his pants to expose his genitals. He then said, "Man, look how hard it is." Miller also exposed himself to Williams a second time that evening. On another occasion, when Williams was in a client's room, Miller came to the doorway and exposed and fondled himself in front of her and the client. Miller also approached Williams when she was on a sofa with two clients. On this occasion he pulled open the neck of Williams's blouse to look at her breasts. Another time, Miller asked Williams to go with him to the copy machine, where he brushed up against her, touched her breasts and buttocks, and again exposed himself.

Miller admitted that he exposed himself to Conner on multiple occasions. The first incident occurred after Miller called Conner into his office and asked her to shut the door. He then pulled down his pants and exposed himself after asking Conner if

MDMH raised the affirmative defense announced in *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 807–08 (1998), and argued that Conner and Williams were unreasonable in failing to report the harassment.

About five months after Miller's temporary assignment ended, Debi Hatheway ("Hatheway"), a supervisor at HHC approached Williams regarding the appropriateness of her work attire. Williams responded in a tirade and made statements about an unnamed former supervisor that prompted Hatheway to inquire further. Williams then, for the first time, related the facts of Miller's misconduct to an MDMH official. Hatheway promptly reported the allegations to MDMH and shortly thereafter Miller was placed on administrative leave pending an investigation into

---

she "wanted to see something grow." That same evening, Miller grabbed Conner's breasts and buttocks. On approximately three occasions while Conner and Miller were in HHC's swimming pool watching clients, Miller would swim up behind Conner and grab her breasts and try to put his hand between her legs. On another occasion, Conner was asked to assist Miller in transporting a client in the department's van. On the ride back to HHC, Miller reached over and tried to pull up Conner's shirt and bra. Miller then exposed his penis and asked Conner if she would "like to see how fast a worm could grow?" During another ride, Miller groped Conner, exposed his penis, and kept asking her to touch and stroke it.

Both Conner and Williams confirmed that there were no competent witnesses to testify to Miller's acts of misconduct. MDMH's sexual harassment policy requires employees who are harassed, or perceive that harassment may be occurring in the workplace, to report the incident to a supervisor, or if the supervisor is the harasser, other managers or administrators in their section, or to the personnel office. Williams acknowledged receiving and reading MDMH's sexual harassment policy. Conner received, but did not read the policy; she did, however, attend training on sexual harassment during orientation and knew there was a reporting procedure in place to use if she was being sexually harassed as an employee.

Williams's allegations. Conner never reported the harassment. Miller resigned from the department before any further action was taken.

Both women subsequently filed this hostile work environment sexual harassment lawsuit. The district court granted summary judgment on their claims, finding that although both Williams and Conner established a prima facie case, MDMH promptly prevented and corrected Miller's sexually harassing behavior. The district court also found that Williams and Conner unreasonably failed to take advantage of the preventative and corrective opportunities provided by MDMH to avoid harm. Williams and Conner seek reversal of summary judgment in favor of MDMH and Thornton arguing that the district court misapplied *Faragher* and *Ellerth*.

## II. *Discussion*

We review the grant or denial of summary judgment de novo, applying the same standard as the district court and may affirm on grounds supported by the record. *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997). Summary judgment is appropriate where the record shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 834 (8th Cir. 2002). "We remain mindful that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) (citing *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999)).

To establish a cause of action for hostile-work-environment sexual harassment, Williams and Conner must prove (1) that they belong to a protected group; (2) that they have been sexually harassed; (3) that the harassment was based on gender; (4) that the harassment was unwelcome; and (5) that the harassment affected a term, condition, or privilege of employment. *Scusa v. Nestle USA Co.,* 181 F.3d 958, 964

(8th Cir. 1999). "To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive." *Breeding v. Arthur J. Gallagher and Co.,* 164 F.3d 1151, 1158 (8th Cir. 1999); *see also Moring v. Arkansas Dept. of Correction*, 243 F.3d 452, 455 (8th Cir. 2001). It is undisputed that both Williams and Conner established a prima facie case.[4]

Because the harassment in this case was committed by an employee who supervised Williams and Conner, MDMH is vicariously liable for the harassment unless it can establish the affirmative defense established in *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 807–08 (1998). *See Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004).

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see Fed. Rule Civ. Proc. 8(c)*. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior[] and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807.

----

[4]Williams and Conner argue that the district court erred in holding that Miller's actions did not affect a term, condition or privilege of employment, however this is a mischaracterization of the district court's ruling. The district court specifically held that Williams and Conner established a prima facie case.

The district court found MDMH established both elements of the affirmative defense and granted summary judgment. First, the court found that MDMH's "zero-tolerance" anti-harassment policy, reporting procedure, and employee training constituted reasonable actions to prevent harassment under F*aragher*. Second, the district court found that MDMH took prompt action upon notification of Miller's objectionable behavior. Finally, the district court found that Williams and Conner unreasonably delayed using MDMH's preventative or corrective processes. Over four months elapsed before MDMH became aware of Miller's conduct and then only through a report initiated by neither plaintiff but by Williams's supervisor.

Williams and Conner contend that both elements of the *Faragher/Ellerth* affirmative defense require a finding of reasonableness on the employer's and the victim's actions–questions best left to a jury to determine. While Williams and Conner concede that very few facts are in dispute, they maintain that the inferences that can be drawn from those facts remain hotly contested. Specifically, Williams and Conner argue that (1) a reasonable jury could find that MDMH's sexual harassment policy was ineffective and deficient; (2) there were material issues of fact whether there was an unreasonable delay in reporting the harassment; (3) Miller's actions created an actionable hostile work environment after the first incidents of harassment; and (4) the district court erred in holding that an employer escapes all liability when a harassed employee unreasonably delays reporting harassment.

First, Williams and Conner argue that a reasonable jury could find that MDMH's sexual harassment policy was ineffective and deficient because MDMH did very little to implement the policy; the policy failed to include a provision making it mandatory for all supervisors with knowledge of harassment to report it to those in a position to take appropriate action; the policy failed to provide for the separation of the parties involved during the investigation; and another employee's report of Miller's sexual harassment to her supervisor went unreported. As a result, according

to Williams and Conner, they were justified in believing that the harassment would continue until the investigation was complete.

Williams and Conner rely on *Varner v. Nat'l Super Markets, Inc.*, 94 F.3d 1209, 1213–14 (8th Cir. 1996) for their contentions. However their reliance is misplaced as that case is factually distinguishable. In *Varner*, we held insufficient a sexual harassment policy that allowed a supervisor to remain silent notwithstanding his knowledge of incidents of sexual harassment when reporting the harassment would require the supervisor to skip steps in the employer's chain of command. *Id.* While we understood the employer's desire to utilize a chain-of-command structure, its procedure fell short of that which might absolve an employer of liability. *Id.* MDMH's policy does not encourage such a rigid chain-of-command structure and expressly permits victims of sexual harassment to skip steps in the chain-of-command when reporting sexual harassment.

MDMH's policy identifies the various employees, not just the immediate supervisor, of MDMH to whom employees may report a violation either verbally or in writing. Through its grievance procedure, the policy also provides an alternate course of complaining about prohibited behavior. The investigatory procedure provided in the policy gives employees notice of all events that will occur upon filing a complaint. Non-retaliation and zero tolerance provisions also protect employees from adverse actions resulting from their complaint. The policy adds that "[e]mployees will be reassigned if necessary," and states that the investigation will insure "confidentiality to the maximum extent possible." Like every other employee, Williams and Conner participated in the new employee orientation upon commencement of employment. The orientation covered fair employment practices and grievance procedures. Williams and Conner received and were aware of the sexual harassment policies and the employee handbook. We agree with the district court that there are no genuine issues of material fact regarding the reasonableness of MDMH's sexual harassment policy.

Second, Williams and Conner argue that the district court erred in finding that there was no material issue of fact whether Williams and Conner unreasonably delayed reporting Miller's harassment. According to Williams and Conner, MDMH cannot show that they were unreasonable in failing to use the reporting mechanism. We disagree. Both Williams and Conner admitted that they knew Miller's conduct was inappropriate from the very first instance, yet Conner never reported the behavior to anyone. Williams reported the harassment only after she no longer worked with Miller when, four months after the fact, a supervisor pressed her for details of unspecified allegations of misconduct.

Williams and Conner both argue that their delay, or in Conner's case complete failure to report, is excused by their shame, shock and humiliation. As noted by the Seventh Circuit, "[w]hile a victim of sexual harassment may legitimately feel uncomfortable discussing the harassment with an employer, that inevitable unpleasantness cannot excuse the employee from using the company's complaint mechanisms." *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999). An employee has a duty under *Ellerth* to alert the employer to any allegedly hostile environment and "an employee's subjective fears of confrontation, unpleasantness[] or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment." *Id.* Given the nature of the allegations against Miller, it was unreasonable not to promptly report his conduct.

Williams and Conner also argue that they acted reasonably in not reporting Miller because MDMH's policy provides that an immediate investigation will be initiated within five days and, therefore, even if they had reported Miller immediately, MDMH "had five days to begin an investigation and then enough time to perform a thorough investigation before they would have taken any action against Miller." This argument does not square with the undisputed facts. Miller was put on administrative

leave and a prompt investigation was begun within three days of MDMH learning of Miller's conduct.

Third, Williams and Conner argue that Miller created an actionable hostile work environment after the first one or two incidents of harassment, and thus Williams and Conner had an actionable claim from the beginning of the harassment. In *Todd v. Ortho Biotech, Inc.*, 175 F.3d 595, 598 (8th Cir. 1999), we suggested "that a single severe act of sexual harassment can, without more, constitute a hostile work environment that is actionable under Title VII." While the issue has not been squarely addressed, "portions of the opinions in *Ellerth* and *Faragher* cast doubt on its resolution." *Id.* We noted in *Todd* that the *Faragher/Ellerth* "affirmative defense was adopted to avoid 'automatic' employer liability and to give credit to employers who make reasonable efforts to prevent and remedy sexual harassment." *Id.* (citation omitted).We also noted that "[the *Faragher/Ellerth*] defense, adopted in cases that involved ongoing sexual harassment in a workplace, may not protect an employer from automatic liability in cases of single, severe, unanticipatable sexual harassment unless, for example, the harassment does not ripen into an actionable hostile work environment claim until the employer learns that the harassment has occurred and fails to take proper remedial action." *Id.*

Most recently in *McCurdy v. Arkansas State Police*, 375 F.3d 762, 768 (8th Cir. 2004), we discussed the applicability of the *Faragher/Ellerth* affirmative defense in the context of a factual scenario involving a single incident of sexual harassment by an employer. We held that "the Supreme Court, in crafting the *Ellerth/Faragher* affirmative defense, did not change course in sexual harassment jurisprudence by holding employers strictly liable for single incidents of supervisor sexual harassment." *Id.* at 772. In so holding, we reasoned that "[t]o reach a conclusion that the affirmative defense is unavailable in single incident cases in which the employee takes advantage of preventative or corrective opportunities provided by the employer

and the employer thereafter takes swift and effective action to avoid further offensive conduct stands the underlying policy behind the affirmative defense on its head." *Id.* We noted that "[d]enying such an employer an opportunity to avail itself of the affirmative defense, when the employer has done all that an employer could reasonably be expected to do to avoid and remedy the offending behavior, effectively creates strict liability for employers in a single incident case-contrary to the Supreme Court's holding in *Meritor* [*Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)]." *Id.* Moreover, "[t]o hold otherwise would make the promise of an affirmative defense in single incident cases not involving a tangible employment action illusory-the pragmatic result would be to hold . . . employers . . . strictly liable for all single incidents of supervisor harassment, while allowing other employers an affirmative defense for multiple and ongoing incidents of supervisor harassment." *Id.*

This case does not involve a single, severe, unanticipated act of sexual harassment. The sexual harassment in this case involved ongoing sexual harassment of exactly the type *Faragher* and *Ellerth* address. The district court did not err in applying the *Faragher/Ellerth* affirmative defense to the facts of this case.

Finally, Williams and Conner argue that the district court erred in holding that an employer escapes all liability when a harassed employee unreasonably delays reporting the harassment. This is also a mischaracterization of the district court's decision.[5] The district court granted summary judgment in favor of MDMH because the district court found that MDMH established both elements of the *Faragher/Ellerth* affirmative defense. We agree and affirm the district court's grant of summary judgment in favor of MDMH and Thornton.

---

[5]*See* footnote 2.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the judgment of the court and most of its opinion, but I would address the appellants' third argument a bit differently. The appellants argue that because the first one or two incidents of sexual harassment in this case were severe and unanticipated, they had an actionable claim from the beginning of the harassment, and the affirmative defense to liability announced in *Faragher v. City of Boca Raton,* 524 U.S. 775, 807-08 (1998), and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765 (1998), should thus not be available to the employer. It seems to me that the answer to the appellants' contention is not merely that this case involved ongoing harassment (as did *Faragher* and *Ellerth*) rather than a single act of harassment. *Cf. ante*, at 10. The Court in *Faragher* and *Ellerth* did not address an argument that either employer had created an actionable hostile work environment in the first one or two incidents of harassment, such that the employees had no opportunity to prevent the harm before it occurred. In announcing the affirmative defense under the circumstances of the *Ellerth* case, the Court seemed to contemplate that it "could encourage employees to report harassing conduct *before* it becomes severe or pervasive," 524 U.S. at 764 (emphasis added), that is, before it is actionable. Similarly, in *Faragher*, the Court explained the affirmative defense by saying that "[i]f the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care." 524 U.S. at 807. The defense was unavailable in *Faragher* because the employer had failed to exercise reasonable care to prevent harassment. *Id.* at 808.

The reason why I believe the appellants' third argument fails is that it is foreclosed by our decision in *McCurdy v. Arkansas State Police*, 375 F.3d 762 (8th Cir. 2004). *McCurdy* considered a question not directly addressed in *Ellerth* and *Faragher*, and held that an affirmative defense to liability is available even where a severe act of sexual harassment by a supervisor creates an actionable hostile work environment *before* the employee has an opportunity to make a complaint, as long as

-11-

the employer "takes swift and effective action to insulate the complaining employee from further harassment the moment the employer learns about the harassing conduct." *Id*. at 771. Like the plaintiff in *McCurdy*, the appellants here claim that the employer may not rely on an affirmative defense to liability (as opposed to damages) when a severe act of harassment creates an actionable work environment prior to the time when the employee reasonably could be expected to report the harassment. That argument fails in light of *McCurdy*.

_____