Jesse BUTLER, Plaintiff,

v.

John POTTER, Postmaster General,
United States Postal Service,
Defendant.

No. 3:02–CV–383.

United States District Court,
E.D. Tennessee,
at Knoxville.

Nov. 22, 2004.

Robert S. Olive, Olive & Olive, PC, Knoxville, TN, for Plaintiff.

John T. Buckingham, Elizabeth S. Tonkin, U.S. Department of Justice, Office of U.S. Attorney, Knoxville, TN, for Defendant.

## MEMORANDUM OPINION

VARLAN, District Judge.

This employment discrimination case is before the Court on two pending motions: defendant's Motion for Summary Judgment [Doc. 21] and defendant's Motion to Strike [Doc. 33]. After the initial round of briefs [Docs. 22, 30, 34, 35, 38], plaintiff was permitted to file an amended complaint and the parties filed supplemental briefs on the summary judgment issues [Docs. 41, 49, 50]. The Court has carefully considered the pending motions and related pleadings, in addition to the arguments of counsel presented on October 25, 2004, in light of controlling law and the entire record.

For the reasons set forth herein, defendant's motion to strike will be denied and defendant's motion for summary judgment will be granted in part and denied in part.

### I. *Relevant Facts*

As the defendant has noted, the briefing in this case has been somewhat disjointed, perhaps because it is unclear exactly what claims plaintiff is asserting. The Court has endeavored to discern those facts that are both relevant and necessary for a fair evaluation of the pending motions in light of the claims as they can be ascertained. As the Court is required to do in reviewing a motion for summary judgment, the facts will be viewed in the light most favorable to the non-moving party. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Plaintiff Jesse Butler was previously employed as a mail carrier with the United States Postal Service in Anderson County, Tennessee. He complains that a supervisor in the post office, Roger Asbury, periodically screamed obscenities at him and accused him of being Indian or Middle Eastern. It is undisputed that plaintiff is neither of Indian nor Middle Eastern origin; he is a white Caucasian.

Plaintiff filed a complaint with the Postal Service Equal Employment Office ("EEO") on April 17, 1998, in which he checked national origin and sex as the bases for discrimination.[1] [Doc. 42 at ¶ 11; Doc. 30, Ex. 1.] Plaintiff claims that during the week before April 24, 1998, Mr. Asbury made reference to "cutting" someone in plaintiff's presence. On April 24, 1998, shortly after Mr. Asbury reportedly said "I'll just have to cut him" in plaintiff's presence, the plaintiff suffered a heart attack as he was unloading a case of mail.[2] [Doc. 42 at ¶ 13.] Plaintiff was hospitalized, underwent surgery, and was absent from work during a long period of convalescence.

During the period of time when plaintiff was recovering from heart surgery, he complains that he was not selected for a position as a Building Equipment Mechanic. [*Id.* at ¶ 15.] The only information regarding his non-selection came from Ron Thompson, a maintenance supervisor, who played in a music group with plaintiff. It appears, although the record is not entirely clear, that Mr. Thompson was not involved in the decision to fill that position.

---

1. Prior to filing his request for EEO counseling, plaintiff revealed his complaint form to Mike Wankowski, who served as a temporary supervisor. Wankowski reportedly laughed and stated that he also thought plaintiff was an Arab. [Doc. 42 at ¶ 11.]

2. The record contains no proof that Asbury's remarks were directed at plaintiff.

He also complains of available positions of which he was neither advised nor selected during his period of convalescence [*Id.* at ¶ 18], although he admits that the persons selected for these other positions had more seniority.

Plaintiff states that he was released to return to work with some physical restrictions on August 25, 1998. However, he was advised that the Postal Service had no available positions to accommodate his restrictions. Specifically, plaintiff alleges that he requested a truck or light duty assignment as a reasonable accommodation and his request was denied. [*Id.* at ¶ 19.]

Plaintiff's physical restrictions were lifted on November 1, 1998, and he returned to work on November 14, 1998. He complains that he was then assigned "the most difficult walking route in the service," that he had to carry packages in the rain, that he was advised he could not be out after dark, and he received very little assistance from other carriers on his first day. [*Id.* at ¶ 20.] He further asserts that Teresa Welch, a supervisor, orally reprimanded him, for bringing back undelivered mail. On November 21, 1998, plaintiff claims he was followed by temporary manager Mike Wankowski in a dangerous and unsafe manner.

Plaintiff complains of further inappropriate language by Roger Asbury during the period of November 14 and December 7, 1998. He also asserts that a grievance meeting was scheduled on the same day he was scheduled to attend an EAP appointment. After a grievance meeting on December 8, 1998, plaintiff complains that he was assaulted in the men's room by Mr. Asbury who was "thrashing his arms about vigorously as he washed his hands, with his elbows coming within an inch of plaintiff's face." [*Id.* at ¶ 25.] The sequence of the next few events is not entirely clear, but plaintiff requested sick leave and then was advised he missed an EAP appointment that he did not even know had been set. When he tried to return to work, he was charged with being Absent Without Leave (AWOL) for missing an EAP appointment. He requested further leave and was granted a week of leave. When he was scheduled to work again, he returned to work to avoid being charged with another AWOL. The last day worked by plaintiff was January 19, 1999, and he ultimately resigned from the Postal Service in September 1999.

Plaintiff claims that he is disabled by virtue of a major depressive disorder, which affects his sleep, his ability to have sexual relations, and his ability to mentally focus on his job. [*Id.* at ¶ 33.] He further asserts that he was perceived as being disabled because he requested stress counseling in April 1998 and because he provided documentation regarding his condition to Jack Edson upon his return to work. [*Id.* at ¶ 33.]

It is undisputed that plaintiff filed two EEO complaints while he was employed with the Postal Service [Doc. 41, Exs. 3, 4, 5, 6]. The first, number 4H370012898 ("the 1998 complaint"), was filed May 27, 1998, and plaintiff checked national origin (perceived as Arab or Indian) and sex as the bases of discrimination. The EEO office accepted his complaint for investigation on the following issues: "You were demeaned, harassed, and cursed by Management to the point that you feel unsafe on the workroom floor, and have torpedoed your chances at promotion and/or will torpedo any chance you have for promotion in the future." [*Id.* at Ex. 4.] Plaintiff submitted a lengthy affidavit, dated November 24; 1999, as part of the investigation of the 1998 complaint. [Doc. 49, Ex. A.] Plaintiff filed a second complaint, number 4H370005599 ("the 1999 complaint"), on

April 9, 1999, in which he asserted race (presumed Arabic), national origin (presumed Arabic), disability (stress and anxiety), and retaliation as the bases of discrimination. [Doc. 41, Ex. 5.] Plaintiff also submitted a lengthy affidavit during the investigation of the 1999 complaint which is contained in the record. [Doc. 30, Ex. 2 at pp. 13–32.]

As set forth in his Amended Complaint, plaintiff asserts discrimination because of his disability, including a failure to accommodate a disability, perceived race and/or national origin discrimination, hostile work environment, retaliation, and constructive discharge. [Doc. 42 at ¶ 1.]

## II. *Defendant's Motion to Strike*

The defendant has moved [Doc. 33] to strike certain materials submitted in support of plaintiff's response to the motion for summary judgment. Specifically, defendant objects to: (1) the affidavit of Maria O'Shaughnessy; (2) Exhibit 1 to plaintiff's affidavit, pp. 92–96, 104–106, 115–117, 123–137; (3) Exhibit 3 to plaintiff's affidavit; and (4) Exhibit 7 to plaintiff's affidavit.[3] Defendant contends that these materials do not meet the criteria of Fed. R.Civ.P. 56(c), which specifies the type of documents on which the Court may base its ruling on a motion for summary judgment. Defendant argues that the O'Shaughnessy affidavit and attached letter are objectionable because Dr. O'Shaughnessy was not disclosed as an expert witness, because no foundation has been laid for the opinions expressed in the affidavit, and the affiant lacks the expertise to express some of the opinions contained in the affidavit. The documents within Exhibit 1 and Exhibit 3 objected to by defendant are unauthenticated medical

records which include the opinions of medical providers. Finally, defendant objects to Exhibit 7 as it is a bench decision from a discrimination complaint filed by another former employee of the Postal Service. Defendant argues that this opinion, offered for the administrative law judge's factual conclusions regarding Roger Asbury, are irrelevant to the instant case. In sum, defendant argues that these documents should be stricken from the record and should not be considered by the Court in ruling on the pending motion for summary judgment. [Doc. 34.]

Plaintiff opposes the motion to strike and submits that defendant has been properly notified of his intent to rely on the expert opinions of Dr. O'Shaughnessy through initial disclosures and written discovery. Plaintiff also argues that the legal authorities relied upon by the defendant are inaccurate in light of the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and that affidavits submitted in opposition to summary judgment no longer have to be admissible in evidence. Plaintiff further argues that most of Dr. O'Shaughnessy's opinions are within the purview of her expertise. With respect to the medical documents, plaintiff submits that they are offered to show the knowledge of the Postal Service employees of the existence of plaintiff's disabling condition. Finally, plaintiff contends that the administrative decision is offered to show that Mr. Asbury's conduct was intentional and shows the intentional nature of the supervisory failures both within the office and regionally. [Doc. 36.]

Defendant's reply brief argues that plaintiff's failure to make a separate disclo-

---

**3.** These materials were submitted along with plaintiff's Response Opposing Defendant's

Motion for Summary Judgment [Doc. 30].

sure of expert testimony pursuant to Fed. R. Civ. P 26(a)(2) is prejudicial to the defendant. Defendant contends plaintiff cannot show that Dr. O'Shaughnessy's affidavit would be admissible at trial or that she would be competent to testify at trial on the matters contained in her affidavit. Defendant also argues that a supervisor's knowledge of health problems is not relevant to the issue of whether an employee was regarded as disabled and thus the proffered medical records are irrelevant. Finally, defendant underscores its position that the bench decision has no relevance to the issues of this case. [Doc. 38.]

While defendant's arguments have merit and many of the documents submitted by plaintiff are not relevant to the issues presented, the Court has nevertheless, out of an abundance of caution and in an attempt to be fair to the plaintiff, carefully considered all of the materials submitted by both parties in support of and in opposition to the motion for summary judgment. The Court further notes that the materials of which defendant complains do not affect the Court's ruling as set forth below. Therefore, defendant's motion to strike will be denied and these filings by plaintiff will continue to be part of this record.

### III. *Defendant's Motion for Summary Judgment*

#### A. *Standard of Review*

Under Fed.R.Civ.P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view

the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir.2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

In light of the various types of claims and bases for each type of claim, the Court will attempt to set forth each category of claims and the bases for each claim within that category in some organized, meaningful fashion. The Court notes that plaintiff's original complaint appeared to assert claims based on gender discrimination and hostile work environment based upon sex. However, plaintiff has now abandoned those claims as stated in the Amended Complaint [Doc. 42 at ¶ 6] and they will not be further addressed by the Court.

### B. *National Origin and/or Race Discrimination*

■ As noted in the Amended Complaint, plaintiff asserts discrimination, including the creation of a hostile work environment, on the basis of his perceived race and/or national origin.[4] [Doc. 42 at ¶ 1.] However, it is undisputed that plaintiff is not of Arab, Indian, or Middle Eastern descent and that he so informed his supervisors in response to their questions about his prominent nose. As defendant points out, Title VII protects those persons that belong to a protected class, *see* 42 U.S.C. § 2000e–2(a)(1), and says nothing about protection of persons who are *perceived* to belong to a protected class. Defendant further notes that Congress has shown, through the Rehabilitation Act and the Americans with Disabilities Act, that it knows how to enact legislation that protects persons who are wrongly perceived to be in a protected class. Neither party has cited any controlling authority which would permit a claim for perceived race or national origin discrimination and this Court is unaware of any such precedent. For these reasons, the Court finds that plaintiff cannot state a claim for discrimination based on his perceived race and/or national origin and summary judgment will be granted on these claims.

### C. *Disability Discrimination*

■ Plaintiff asserts a claim of disability discrimination under the Rehabilitation Act, 29 U.S.C. § 791, including a claim for failure to accommodate his disability. [Doc. 42 at ¶ 1.] Plaintiff further claims that he suffers from a major depressive disorder, which affected his major life activities of sleep, the ability to have sexual relations, and the ability to mentally focus on his job. [*Id.* at ¶ 33.] He further

claims that defendants perceived him as being disabled because of a request for stress counseling and documentation of his condition upon his return to work. [*Id.*] At oral argument, plaintiff's counsel suggested that he was perceived as disabled because he was particularly vulnerable to stress.

Defendant has presented several arguments on plaintiff's disability claims. Defendant asserts that plaintiff cannot show he is an individual with a disability within the meaning of the Rehabilitation Act, which is required for a prima facie case of disability discrimination. [Doc. 22 at p. 6.] Defendant further argues that much of the medical and psychological evidence relied upon by plaintiff is inadmissible and is the subject of defendant's motion to strike. [Doc. 35 at p. 8.] Defendant vigorously argues that plaintiff has failed to exhaust a claim of failure to accommodate his alleged disability. [Doc. 41 at p. 4; Doc. 50 at pp. 3–4.] Moreover, defendant argues that there is no evidence to support such a claim as plaintiff cannot show he is an individual with a disability.

Plaintiff contends that the 1999 EEO complaint had "disability" checked as one of the bases of discrimination and that administrative complaints of employment discrimination should be viewed expansively. He further contends that a failure to accommodate claim reasonably relates to and arises from the charges on his EEO complaint form. [Doc. 49 at pp. 1–2.]

Defendant relies on recent Sixth Circuit authority for the well established proposition that federal employees must exhaust their administrative remedies by contacting an EEO counselor within 45 days of the discriminatory act before filing suit under Title VII. *Horton v. Potter*, 369 F.3d

---

**4.** Plaintiff's counsel clarified at oral argument that he does not assert a claim for failure to promote based on national origin and/or race discrimination.

906, 910 (6th Cir.2004). Defendant points out that the record contains "passing references" to the failure to accommodate claim but that plaintiff did not assert such a claim at the EEO level and that the agency did not investigate such a claim. [Doc. 41 at pp. 4–5.] Defendant further argues that the failure to provide a job within an employee's restrictions is a discrete, discriminatory act subject to the exhaustion requirement, just as a failure to transfer would be a discrete discriminatory act, but has not cited any authority for such proposition. [Doc. 50 at pp. 3–4.]

The evidence on this issue is sparse. It is clear that plaintiff alleged discrimination on the basis of his disability in the 1999 complaint. The complaint form does not reference a failure to accommodate, although plaintiff's investigative affidavit, dated May 25, 2000, mentions that he was "requesting by accommodation of no undue stress upon return to work in August 1998." [Doc. 30, Ex. 2 at p. 16.] Plaintiff's documentation further indicates that he was asked by Jack Edson about the August 1998 restriction and plaintiff responded "that all I required was a safe environment in accordance with the contract, and went into some detail as to what that meant." [*Id.* at p. 29.] He then indicates that he requested accommodation on November 16, 1998 when he asked for assistance in completing his new route and that he further asked for accommodation when he requested EAP counseling for stress. [*Id.*] Defendant argues that the inclusion of these facts in plaintiff's May 25, 2000 affidavit cannot resurrect a claim that expired on October 9, 1998 (45 days after the failure to accommodate on August 25, 1998). [Doc. 50 at p. 4, n. 2.] Defendant further notes that plaintiff's first contact with the EEO counselor on the 1999 complaint occurred on November 20, 1998.

There does not appear to be any controlling case law on the issue of whether the denial of a request for accommodation under the ADA or the Rehabilitation Act is a discrete event. There is, however, some authority which holds that denial of a request for religious accommodation under Title VII is a discrete event that must be the subject of a timely administrative complaint. *See Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 134–35 (2nd Cir. 2003) ("an employers' rejection of an employee's proposed accommodation for religious practices … is the sort of 'discrete act' that must be the subject of a complaint to the EEOC"); *see also Fol v. City of New York,* 2003 WL 21556938, at *5 (S.D.N.Y.2003) (each request for accommodation and denial is a discrete act). By analogy, the Court finds that the denial of plaintiff's purported request for accommodation in August 1998 was a discrete event which should have been the subject of a timely EEO complaint. Because plaintiff did not file an EEO complaint within 45 days of such request, that claim is time-barred. The Court further agrees with defendant that the inclusion of this and other purported requests for accommodation in plaintiff's May 25, 2000 affidavit does not revive otherwise untimely claims. *See Horton,* 369 F.3d at 911 ("the Postal Service did not waive the defense of an untimely request for counseling merely by receiving and investigating Horton's complaint of discrimination").

While it is not entirely clear, it appears that plaintiff is also asserting that he was subjected to a hostile work environment because of a disability or that he was perceived as being disabled. It is also not clear whether this claim is asserted as one of the bases for plaintiff's retaliation claim or is asserted as a separate claim. Thus, the Court will examine the merits of such a claim under both scenarios.

In order to prove a prima facie case of disability discrimination, the plaintiff must show that he is disabled, that is, that he (1) had a physical or mental impairment which substantially limits one or more major life activities, (2) had a record of such an impairment, or (3) was regarded as having such an impairment. *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir.2004); *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir.2004). Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Timm*, 375 F.3d at 423; *Mahon v. Crowell*, 295 F.3d 585, 590 (6th Cir.2002).

The Amended Complaint alleges that plaintiff suffers from a major depressive disorder which affected his ability to sleep, to have sexual relations, and to mentally focus on his job. [Doc. 42 at ¶ 33.] Accepting this allegation as true as the Court must at summary judgment, the only evidence submitted as to the extent of plaintiff's impairment is the affidavit submitted by Dr. Maria O'Shaughnessy, a psychologist who treated plaintiff and whose affidavit is objected to by defendant in the motion to strike. Dr. O'Shaughnessy opines that plaintiff is significantly limited in "one or more major life functions, including the ability to work normal hours without exhaustion and including sleeping normally." [Doc. 30, O'Shaughnessy Aff.] Even accepting this testimony, however, plaintiff has provided no more than conclusory assertions rather than detailed information as to the extent of his impairment or how his limitations specifically affect him. Such evidence is wholly insufficient to support a verdict that he is disabled under the law. *See Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir.2002) ("[a] single conclusory statement about an alleged substantial limitation is not enough

to avoid summary judgment sought by the employer").

Plaintiff further alleges that he was perceived as being disabled and that defendant was aware of his disability beginning with his request for stress counseling in April 1998 and through the documentation he provided upon his return to work. [Doc. 42 at ¶ 33.] It is clear, however, that the only ways in which a plaintiff may be "regarded as disabled" is either (1) the employer mistakenly believes that a person has a physical or mental impairment that substantially limits one or more major life activities, or (2) the employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities. *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir.2002). In other words, the employer must hold a mistaken belief that a plaintiff is disabled with the meaning of the Rehabilitation Act. *Id.* Plaintiff has not presented any evidence to show that the Postal Service held a mistaken belief as to his physical or mental condition. Indeed, the evidence shows that plaintiff returned to work on November 14, 1998, without any physical restrictions and he was assigned "the most difficult walking route in the service." Contrary to plaintiff's allegations, it appears that the Postal Service regarded him as fully able to perform his duties without limitation. Because plaintiff is neither disabled nor perceived as disabled within the meaning of the Rehabilitation Act, his disability claims must fail and summary judgment will be granted on those claims.

### D. *Constructive Discharge*

Plaintiff alleges that the various forms of discrimination led to his constructive discharge from the Postal Service. [Doc. 42 at ¶ 1.] Defendant argues that plaintiff has not exhausted his administrative remedies for any claim of constructive

discharge and that constructive discharge is a discrete act which must be the subject of a timely administrative complaint. [Doc. 50 at p. 6.] Defendant relies on a recent opinion from this Court by the Honorable Leon Jordan, United States District Judge, in *Caras v. Potter,* No. 3:03–CV–662 (E.D.Tenn. Sept. 30, 2004). Counsel for the plaintiff urges this Court not to follow Judge Jordan's decision and notes that plaintiff did advise of his constructive discharge during the investigation of his 1999 complaint such that the Postal Service had notice of his claim and an opportunity to investigate.

The Court has reviewed Judge Jordan's memorandum opinion from *Caras* and the authorities cited therein. The Court agrees with Judge Jordan's legal analysis and can find no factual or legal reason to reach a different conclusion in the present case. Assuming that plaintiff was constructively discharged, that event is a discrete act which must be the subject of a timely administrative complaint. *See Horton,* 369 F.3d at 910. It is undisputed that plaintiff resigned from his employment with the Postal Service effective September 25, 1999, and he did not amend the then-pending 1999 EEO claim or file a separate EEO complaint to add a constructive discharge claim. Thus, plaintiff has not satisfied the administrative exhaustion requirements for a constructive discharge claim and it must be dismissed.

### E. *Retaliation*

As with other types of discrimination claims, the analytical framework for retaliation cases involves three stages. First, the plaintiff must set forth a prima facie case, which gives rise to an inference of discrimination.[5] *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is pretext for discrimination. *Id.*

■ While not specifically designated as such by the parties, it appears that plaintiff's retaliation claim is a claim for retaliatory harassment. As outlined by the Sixth Circuit, a plaintiff asserting a claim of retaliatory harassment must show the following: (1) that he engaged in activity protected by Title VII; (2) that the exercise of protected rights was known to the defendant; (3) that the defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Akers v. Alvey,* 338 F.3d 491, 497 (6th Cir.2003); *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000). The parties do not dispute that plaintiff can satisfy the first two elements; defendant argues, how-

---

5. A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995). Plaintiff has not alleged, and the record does not reveal, any direct evidence of discrimination, *i.e.,* evidence which proves the existence of a fact without any inferences or presumptions. *Laderach v. U–Haul of Northwestern Ohio,* 207 F.3d 825, 829 (6th Cir. 2000).

ever, that plaintiff cannot satisfy the third or fourth elements of such a cause of action.

An "adverse employment action" has been defined by the Sixth Circuit as a materially adverse change in the terms and conditions of employment. *Smith v. City of Salem, Ohio,* 378 F.3d 566, 575 (6th Cir.2004). An adverse employment action is more than a mere inconvenience or an alteration of job responsibilities. *Id; see White v. Burlington Northern & Santa Fe R. Co.,* 364 F.3d 789, 799 (6th Cir.2004) ("[w]e developed the adverse-employment-action element to prevent ... claims based upon trivial employment actions"). Instead, examples of an adverse employment action include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, and suspensions. *Smith,* 378 F.3d at 575–76. Plaintiff complains that he was assigned the longest walking route for his station, he was followed on his route in an aggressive and dangerous manner, he was given conflicting instructions, he was ordered to violate safety policies, he was given an improper disciplinary warning, and he was set up to be falsely accused of being absent without leave. [Doc. 42 at ¶¶ 20–28.] Defendant contends that none of these allegations, even if true, constitute an adverse employment action and the Court agrees. Plaintiff's complaints simply do not rise to the level of a materially adverse change in employment conditions.

Alternatively, the third element of a retaliatory harassment claim may be satisfied by proof that plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor. *Akers,* 338 F.3d at 497; *Morris,* 201 F.3d at 792. To establish "severe or pervasive" harassment, the plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employ-

ment and create an abusive working environment." *Akers,* 338 F.3d at 498 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The "severe or pervasive" test has both an objective and a subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive. *Akers,* 338 F.3d at 498. Defendant argues that the conduct of which plaintiff complains was not severe or pervasive sufficient to constitute harassment under the law. The Court must view the facts in the light most favorable to the plaintiff. While it is a close question whether a reasonable person would find the conduct alleged to be hostile or abusive, a fair reading of plaintiff's affidavit testimony shows that he subjectively regarded the environment as hostile or abusive. [*See* Doc. 30, Butler Aff.] Therefore, the Court declines to conclude as a matter of law that the conduct complained of was not objectively severe or pervasive.

Even if such allegations constitute a hostile working environment, defendant argues that there is no causal connection between these events and plaintiff's prior EEO activity and plaintiff therefore cannot satisfy the fourth element of a retaliatory harassment claim. To establish a causal connection, the plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken absent participation in the protected activity. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000). Temporal proximity between the protected activity and the hostile work environment may give rise to an inference of a causal connection. *DiCarlo,* 358 F.3d at 421; *Moon v. Transport Drivers, Inc.,* 836 F.2d 226, 229 (6th Cir.1987). Defen-

dant notes that plaintiff's first EEO claim was filed on April 17, 1998, and he returned to work on November 14, 1998, approximately eight months later. Thus, defendant argues there can be no temporal proximity between events that occurred after plaintiff's return to work in November and his first EEO complaint. The plaintiff responds, however, that he was not working during much of that eight month period while convalescing from heart surgery. Thus, he argues that the proximity between his first EEO complaint and the harassing behavior is much closer than the eight months.

The Sixth Circuit has held that there is no one dispositive factor in establishing a causal connection between protected activity and, in this case, the harassing conduct. *Nguyen*, 229 F.3d at 563. The parties have not cited any controlling authority with a similar temporal anomaly, that is, the plaintiff engaged in protected activity, was away from work for a period of time, and then the plaintiff suffered retaliation upon his return to work. However, the Court finds that the unique circumstances of this case are sufficient to establish a prima facie case of retaliation.

The defendant has not argued the merits of plaintiff's retaliation claim beyond whether plaintiff can establish a prima facie case. Thus, the merits of defendant's legitimate, nondiscriminatory reasons for the acts complained of and the ultimate issue of pretext are more appropriately reserved for the trier of fact. The defendant's motion for summary judgment will be denied with respect to plaintiff's retaliation claim.

IV. *Conclusion*

For the reasons set forth above, defendant's motion to strike [Doc. 33] will be denied and defendant's motion for summary judgment [Doc. 21] will be granted in part and denied in part as follows: all of plaintiff's claims will be dismissed with prejudice, except for plaintiff's claim of retaliation. The case will proceed to trial solely on plaintiff's retaliation claim.

Order accordingly.

## ORDER

For the reasons set forth in the accompanying memorandum opinion, defendant's motion to strike [Doc. 33] is hereby **DENIED** and defendant's motion for summary judgment [Doc. 21] is hereby **GRANTED in part** as follows: plaintiff's claims of national origin and/or race discrimination, disability discrimination, and constructive discharge are **DISMISSED with prejudice;** and **DENIED in part** as to plaintiff's claim of retaliation. The case will proceed to trial solely on plaintiff's retaliation claim.

**IT IS SO ORDERED.**