**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SHANNON CHAPMAN,

  Plaintiff-Appellant,

v.

CARMIKE CINEMAS,

  Defendant-Appellee.

No. 08-4043
(D.C. No. 2:06-CV-00948-TS)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **EBEL** and **GORSUCH**, Circuit Judges.

---

Shannon Chapman appeals the district court's grant of summary judgment
in favor of her former employer, Carmike Cinemas, in her case alleging a sexually
hostile work environment and constructive discharge in violation of Title VII of
the Civil Rights Act of 1964. We have jurisdiction under 28 U.S.C. § 1291.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Considering Ms. Chapman's first claim of a hostile work environment, based on a sexual assault by a supervisor, we conclude that Carmike did not adequately establish the elements of the employer's affirmative defense to respondeat superior liability for sexual harassment committed by a supervisor, but that the evidence would not allow a reasonable jury to find Carmike negligent. With regard to her second claim of a hostile work environment, based on the sexually oriented atmosphere of the workplace generally, we conclude both that Carmike established the elements of the affirmative defense and that the evidence would not allow a reasonable jury to find Carmike negligent. Finally, we conclude with regard to her constructive discharge claim that the district court did not err in holding that she was required to amend her existing administrative charge of discrimination or to file a new charge to preserve her claim for litigation. Consequently, we reverse the district court's grant of summary judgment to Carmike on the respondeat superior aspect of the first claim, but affirm on the second and third claims.

I.

Ms. Chapman worked as a projectionist at a Carmike Cinemas theater that was part of a Utah entertainment complex. While she was on duty the night of Tuesday, May 25, 2004, assistant manager Walter McFashion, whom she considered a friend and a father-figure, approached her in the projectionist booth.

He then forcibly led her down the hall to another room, where he sexually assaulted her.

Immediately after the assault and visibly upset, Ms. Chapman contacted the theater's security guard, who in turn contacted the complex's general manager, Larry Curry. Mr. Curry had a female manager sit with Ms. Chapman until she calmed down and had her write a statement about the assault. He told her that for the next few days (until Carmike's city manager, Scott Dunaway, returned from out of town) she would be on paid leave for shifts that coincided with Mr. McFashion's shifts. Mr. Curry also told her that they would investigate and handle the matter, giving Ms. Chapman the impression that she was not to call the police. Ms. Chapman worked on Thursday (when Mr. McFashion was not scheduled), with her supervisor and an assistant manager staying with her and a security guard checking in. She was allowed time off for the weekend, and on Monday, she filed a police report regarding the assault.

When Mr. Dunaway returned that week, he met with Ms. Chapman, Mr. Curry, and the female manager who had been present on May 25. Ms. Chapman told Mr. Dunaway what had happened and gave him a copy of the police report. Mr. Curry gave him the statement she had written the night of the assault. Mr. Dunaway assured Ms. Chapman that she would not have to see Mr. McFashion again. He also informed her that she would be allowed to have a security guard with her when she was closing.

Mr. McFashion did not return to the theater after the Saturday following the assault. First he was on leave, apparently at his own request, and then he was on suspension pending Carmike's investigation. It took Mr. Dunaway several weeks to arrange a meeting with Mr. McFashion. When he did so and heard Mr. McFashion's side of the story, he immediately terminated Mr. McFashion's employment with Carmike. Mr. McFashion later pleaded guilty to three counts of misdemeanor sexual battery and served time in jail. Ms. Chapman admits that she never saw Mr. McFashion at the theater after May 25.

Ms. Chapman continued to work at Carmike for almost a year after the assault. She alleges that during this time, despite Carmike's anti-harassment policy, the atmosphere at Carmike was hostile due to constant sexually-oriented conversations, comments, and jokes by managers and employees. On October 7, 2004, she filed a formal charge of discrimination with the Utah Anti-Discrimination and Labor Division, complaining of Mr. McFashion's assault and the atmosphere at Carmike after the assault. Finally, on May 5, 2005, Ms. Chapman quit her employment. She alleges that she was forced to quit because she could not overcome her fears for her safety and ultimately she could not bear returning to work. She did not amend her charge of discrimination to allege constructive discharge.

Ms. Chapman received her right-to-sue letter and brought suit against Carmike. Her complaint set forth three claims: (1) a sexually hostile work

-4-

environment due to Mr. McFashion's assault; (2) a sexually hostile work environment due to pervasive sexual comments, jokes, and conversations; and (3) constructive discharge. The district court granted summary judgment to Carmike on all three claims.

With regard to the claim about the assault, the district court granted summary judgment for Carmike, holding that Ms. Chapman did not assert that Mr. McFashion was her supervisor and that she did not complain about him prior to the assault, with the exception of the "proposition statement" that she reported to the theater general manager. Aplt. App. at 1324. The court noted that she viewed him as a "father figure" and "they were friends." *Id.* The court also held that the "single statement" that she reported to the theater general manager "could not have been construed as a complaint of sexual harassment" and therefore Carmike was not on notice of any danger from Mr. McFashion. *Id.* at 1325. Finally, the court held that Carmike responded reasonably to end the harassment when she reported the assault by investigating the incident and terminating Mr. McFashion's employment.

With regard to the second claim, which alleged a sexually pervasive atmosphere due to managers' and co-workers' constant sexual jokes, conversations, and comments, the district court again granted summary judgment for Carmike, concluding that much of the proffered evidence related to the pre-assault period and thus was not relevant to the claim, which concerned only

the post-assault period. The court also found that Ms. Chapman's relevant evidence was unspecific. It noted that she did not complain to upper management about the few incidents that she did specifically identify. Finally, given the record evidence that she participated in sexual conversations and banter while at work, the district court held that she did not establish the subjective hostility of the environment. In considering this evidence, the district court declined to determine before granting summary judgment whether the evidence was admissible under Federal Rule of Civil Procedure 412.

Finally, with regard to the third claim, which alleged that Ms. Chapman was constructively discharged, the district court granted summary judgment for Carmike, holding that the claim was procedurally barred because she failed to amend her charge of discrimination to include it. Thus, it was not administratively exhausted and not preserved for litigation.

Ms. Chapman appeals the grant of summary judgment with respect to each of her three claims.

## II.

"We review a grant of summary judgment *de novo*[,] . . . consider[ing] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (quotations omitted). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file,

and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Of course, "we remain free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *MacKenzie*, 414 F.3d at 1273 (quotation omitted).

## A.

Ms. Chapman's first claim alleged a sexually hostile work environment due to the assault. Ms. Chapman argues that the district court erred in granting summary judgment to Carmike because the assault established the existence of a severe, pervasive hostile work environment caused by a supervisor for which Carmike is liable under Title VII either indirectly through principles of employer respondeat superior liability or directly because of its own negligence.

To establish that a hostile work environment exists in resisting summary judgment, a plaintiff must present evidence from which a jury could reasonably conclude that "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (alteration and quotation omitted). For purposes of this appeal, we accept that a

reasonable jury could find each of these elements are established for this claim. *See Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243-44 (10th Cir. 2001) (concluding, in case in which the plaintiff was sexually assaulted by her patient, that jury's finding of sexually hostile work environment was not unreasonable); *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024 n.5 (10th Cir. 2001) (noting that it is an arguable position that even one sexual assault would suffice to create a hostile work environment, but declining to decide the question); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998) (holding that a single incident of physically threatening and humiliating conduct can be sufficient to create a hostile work environment for a sexual harassment claim).

In addition to establishing the hostile work environment elements, the plaintiff must also identify a basis for holding the employer liable under Title VII. *Harsco Corp.*, 475 F.3d at 1186. Potential bases for liability include respondeat superior liability, *see Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), or employer negligence, *see Ellerth,* 524 U.S. at 759; *Harsco Corp.*, 475 F.3d at 1186.

*Respondeat Superior Liability - Ellerth and Faragher*

The Supreme Court has held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

-8-

The first question in determining whether Carmike may be subject to respondeat superior liability for the assault is whether Mr. McFashion was "a supervisor with immediate (or successively higher) authority" over Ms. Chapman. It is clear that he was not Ms. Chapman's direct supervisor – she was a projectionist, and her direct supervisor was the head projectionist. Further, the record contains some indications that projectionist was a management position. But there also is some evidence in the record that assistant managers were in charge when the managers were off, and that they had authority to set schedules, to discipline, and to recommend termination for employees not directly within their command structure. Taking all inferences in favor of Ms. Chapman, for purposes of this analysis we hold that a reasonable jury could find that Mr. McFashion was a supervisor with authority over Ms. Chapman.

*Ellerth* and *Faragher* established an affirmative defense for employers who would otherwise be subject to respondeat superior liability for harassment by a supervisor. When the employee is not subject to a "tangible employment action," the employer may establish the defense by proving two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. "Tangible employment actions are the means by which the supervisor brings the

official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." *Ellerth*, 524 U.S. at 762. Examples of tangible employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.

Ms. Chapman alleges that she quit her employment because after the assault she feared for her safety and ultimately she reached a point where she could no longer bear coming to work. She characterizes her departure as a constructive discharge and argues that it constitutes a tangible employment action, making the *Ellerth/Faragher* defense unavailable to Carmike. The Supreme Court has determined, though, that when "an official act does not underlie the constructive discharge," the employer may invoke the *Ellerth/Faragher* affirmative defense. *Penn. State Police v. Suders*, 542 U.S. 129, 148 (2004). Carmike may invoke the defense because Ms. Chapman attributes her resignation to her psychological state, in turn attributed to the assault, rather than to an official act by Carmike.

We conclude that because Carmike showed that it promulgated, disseminated, and conducted training on an anti-harassment policy, it established the first element of the defense, which requires the employer to present evidence that it "exercised reasonable care to prevent and correct promptly any sexually

harassing behavior." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. We need not discuss this element in detail, however, because Carmike has failed to establish the defense's second element, that Ms. Chapman "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. Unlike in *Ellerth* and *Faragher*, the assault on Ms. Chapman was an unforeseeable, one-time incident. In these circumstances, there do not appear to be preventive measures that she could have taken. But she did not fail to avail herself of her corrective opportunity. Instead, she did the opposite – she immediately reported the assault to Carmike through appropriate channels.

The district court granted summary judgment to Carmike even though it failed to show the second prong of the defense. In similar circumstances, the Eighth Circuit refused to require an employer to prove the second prong, concluding that "[s]trict adherence to the Supreme Court's two-prong affirmative defense in this case is like trying to fit a square peg into a round hole," *McCurdy v. Ark. State Police*, 375 F.3d 762, 771 (8th Cir. 2004). Like Ms. Chapman's case, *McCurdy* involved a single incident of harassment, a prompt reporting by the victim, and an effective response by the employer. *See id.* at 764-65, 770-71. The Eighth Circuit determined that it would "critically ask whether Title VII envisions strict employer liability for a supervisor's single incident of sexual harassment when the employer takes swift and effective action to insulate the

complaining employee from further harassment the moment the employer learns about the harassing conduct." *Id.* at 771.

> We conclude the Supreme Court, in crafting the *Ellerth/Faragher* affirmative defense, did not change course in sexual harassment jurisprudence by holding employers strictly liable for single incidents of supervisor sexual harassment. Therefore, we hold the [employer] is entitled to a modified *Ellerth/Faragher* affirmative defense, despite the [employer's] inability to prove the second element.

*Id.* at 772. Accordingly, the Eighth Circuit affirmed a grant of summary judgment for the employer. *Id.* at 774.

The parties in this case, however, did not cite *McCurdy* or argue that we should (or should not) adopt its approach. Accordingly, we decline to address whether this court should adopt the *McCurdy* modification to the *Ellerth/Faragher* affirmative defense in a single-incident situation where the employer had an effective policy in place and took effective measures to punish and stop the offensive conduct by a supervisor once it was reported by the victimized employee. Thus, in this case, we continue to require that the employer prove the employee did <u>not</u> promptly report the single-incident offense before the employer may avail itself of the *Ellerth/Faragher* defense.

Because Ms. Chapman presented evidence that she promptly availed herself of her corrective opportunities by immediately reporting the assault, Carmike failed to establish the second element of the *Ellerth/Faragher* affirmative defense. Consequently, it was not entitled to summary judgment on Ms. Chapman's theory

-12-

of respondeat superior liability for the sexual assault, and this claim must be remanded for further proceedings.

*Direct Liability - Negligence*

Ms. Chapman also complains that Carmike is liable for Mr. McFashion's single-incident assault on her because of its own negligence. In *Ellerth*, the Supreme Court recognized that "although a supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives, an employer can be liable, nonetheless, where its own negligence is a cause of the harassment." 524 U.S. at 759. "An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." *Id.*; *see also Harsco Corp.*, 475 F.3d at 1186 ("Under this theory, [plaintiff] was required to prove . . . that [employer] had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment."). It is Ms. Chapman's burden to show that Carmike acted unreasonably. *Hollins v. Delta Airlines*, 238 F.3d 1255, 1258 (10th Cir. 2001). "Thus, the focus is not on whether the employer is liable for the bad acts of others, but whether the employer itself is responsible for failing to intervene." *Id.*

Ms. Chapman avers that the theater environment was rife with sexual innuendo. She particularly points out that a couple of weeks before the assault, she and Mr. McFashion were talking. She told him that she was having problems with her boyfriend, and that if they broke up she was done with guys for awhile.

-13-

In response, Mr. McFashion stated, "if you and Brad ever break up, me and you are going to fuck." Aplt. App. at 516. Later that evening he repeated the remark. She states that she reported the remarks to the head projectionist, to an assistant manager, and to the theater general manager, but the general manager responded, "that's just the way Walter is" and took no further action. *Id.* Both the head projectionist and general manager testified that they did not recall Ms. Chapman reporting the remarks, and there is no evidence from the assistant manager.

Viewing all facts in favor of Ms. Chapman, we assume that Mr. McFashion made the remarks and Ms. Chapman reported them. But Carmike's inaction was not negligence with respect to the assault. Ms. Chapman admitted that it was the first time Mr. McFashion had said anything to her that made her feel uncomfortable. These isolated remarks would not in and of themselves have established a sexually hostile work environment. *See Faragher*, 524 U.S. at 788 (noting that Title VII is not a "general civility code" and stating that "sporadic use of abusive language, gender-related jokes, and occasional teasing" are among "the ordinary tribulations of the workplace" (quotations omitted)). There was nothing in those remarks to suggest that Mr. McFashion was threatening non-consensual sexual conduct. Had those remarks persisted or had they not been so isolated, we might conclude that Ms. Chapman had established enough evidence to defeat a summary judgment motion on this incident of sexual assault. But, on the record before us, we conclude that the character of the remarks was

-14-

not such that they would or should have put management on notice that Mr. McFashion would sexually assault Ms. Chapman. Carmike was entitled to summary judgment on Ms. Chapman's negligence theory.

For these reasons, the district court erred in granting summary judgment to Carmike on Ms. Chapman's respondeat superior liability theory, but not her negligence theory.

B.

For her second claim, Ms. Chapman alleged a sexually hostile work environment based on constant sexual jokes, comments, and conversations at Carmike <u>after the assault</u>.[1] Ms. Chapman argues that the district court improperly considered evidence of her other sexual conduct that should have been screened under Rule 412 before being considered on summary judgment. She contends that the theater's environment was hostile and Carmike should be liable under principles of respondeat superior liability and/or negligence.

We assume without deciding for purposes of this analysis that Ms. Chapman's post-assault allegations adequately establish the existence of a hostile work environment. Accordingly, we need not address whether the environment was objectively or subjectively hostile, and we need not address her

---

[1] Although much of the evidence before the district court concerned the environment at the theater pre-assault, Ms. Chapman's claim was limited to the post-assault environment because her administrative charge discussed only the assault and the post-assault conditions.

-15-

Rule 412 arguments.[2]  Instead, summary judgment on this claim can be affirmed as to vicarious liability on the basis of Carmike's *Ellerth/Faragher* defense and as to negligence because Ms. Chapman failed to present evidence of Carmike's actual or constructive knowledge.

*Respondeat Superior Liability - Ellerth and Faragher*

Ms. Chapman alleges that the offensive post-assault atmosphere was caused by the theater general manager, assistant managers, and other employees. Because the theater general manager unquestionably was a supervisor with authority over Ms. Chapman, Carmike may be subject to respondeat superior liability for a sexually hostile work environment due to pervasive jokes, comments, and conversations, subject to the application of the *Ellerth/Faragher* defense.  As discussed above, even though Ms. Chapman alleges constructive

---

[2]     Citing 23 Charles A. Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence*, § 5391.1 (1998 Supp.), Carmike argues that Rule 412 applies only at trial, not in summary judgment proceedings.  Wright and Graham cites no authority for this proposition, and at least two courts disagree.  *See Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1374 n.13 (11th Cir. 2000) (per curiam) (noting that the district court erred in considering evidence, on summary judgment, that the circuit court held would be inadmissible under Fed. R. Evid. 412(b)(2)); *Dunegan v. City of Council Grove*, 189 F.R.D. 649, 652 (D. Kan. 1999) ("[W]e do believe that the requirements of Rule 412 must be applied to summary judgment proceedings.").  Considering the well-established rule that summary judgment must rest only on admissible evidence, *see Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1268 (10th Cir. 1998), and that evidence subject to Rule 412 is not admissible until declared so under the terms of the rule, we see no reason why Rule 412 should not be applied in summary judgment proceedings, but that issue need not be resolved in this appeal so we leave it open.

-16-

discharge as a tangible employment action, the defense remains available to Carmike because no official act led to her resignation. *Suders*, 542 U.S. at 148.

Regarding the first element of the defense, we consider the employer's sexual harassment policy dissemination and enforcement. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. Carmike produced evidence that it adopted an anti-harassment policy that prohibited "[v]erbal abuse of a sexual nature, including sexual flirtations, advances, propositions, innuendoes, or sexually suggestive comments" and "[s]exually explicit, suggestive, or offensive jokes." Aplt. App. at 417. The policy was written in an employee handbook and displayed, in more general terms, on a poster at Carmike. The poster instructed:

> Any employee who has a complaint of sexual harassment at work by anyone, including supervisors and co-workers, must bring the problem to the attention of responsible Company officials. Employees may bring their complaint to their Division Manager or the General Manager by calling [toll free numbers] or writing [company address].

*Id.* at 571. While Ms. Chapman disputed whether she ever received a copy of the handbook, she admitted that the policy was posted at Carmike, that she was aware of Carmike's employee hotline for reporting complaints, and that during her employment she attended a meeting at which Mr. Dunaway discussed Carmike's policy. We conclude that the policy and its dissemination generally evidence appropriate efforts by Carmike to prevent sexual harassment.

Ms. Chapman complains that Carmike's anti-harassment policy was not effective or enforced, as evidenced by the sheer number of violations. But there is no indication in the record that any management other than the harassers knew about the objectionable conduct, such that the company would have the opportunity to enforce the policy. Ms. Chapman told the managers at the theater that she thought their conduct was inappropriate, but the theater manager was part of the problem condoning the sexually abusive atmosphere. Ms. Chapman admits that she did not call Carmike's toll-free telephone number or write the company regarding the conduct to complain to the off-site personnel made available to her. Further, the record indicates that the theater general manager was supervised by the complex general manager, Mr. Curry, who was supervised by the city manager, Mr. Dunaway. Apparently Ms. Chapman also did not complain to either Mr. Curry or Mr. Dunaway, although there does not appear to be any reason why she could not have done so.[3]

Ms. Chapman failed to avail herself of her preventive and corrective opportunities when she complained only to people who were complicit in the hostile environment. She could have contacted the Division Manager or General Manager as provided in the anti-harassment policy, or she could have contacted local upper management. It was not reasonable for her to complain to the

---

[3] As city manager, Mr. Dunaway oversaw three locations, but the record indicates that he usually worked thirty hours per week at the complex where Ms. Chapman worked.

offending managers but take no further action to have Carmike end the objectionable conduct. An employer's demonstration of an employee's unreasonable failure to use a complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08; *see also Faragher*, 524 U.S. at 807 ("If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided."). Accordingly, Carmike has established the second element of the *Ellerth/Faragher* defense and was entitled to summary judgment on the issue of its respondeat superior liability.

*Direct Liability - Negligence*

Ms. Chapman also contends that Carmike knew or should have known about the jokes, sexual comments, and conversations and negligently failed to put a stop to them. To avoid summary judgment, she must present evidence that would allow a reasonable jury to find that Carmike "had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Harsco Corp.*, 475 F.3d at 1186.

Ms. Chapman alleges that she reported the harassment to mid-management-level employees by informing the theater general manager and assistant managers that their conduct was inappropriate. But these management-level employees

were the alleged harassers. Their knowledge should not be imputed to Carmike. *See Restatement (Third) of Agency* §§ 5.02(1), 5.03(a), 5.04. Ms. Chapman admits that she did not report the conduct to any local higher-level management employees or to Carmike through its toll-free numbers or company address. Further, the conduct does not appear to be such that local upper management should have become aware of it in the course of performing their duties. We conclude that Carmike did not have actual or constructive knowledge of the harassing environment. Consequently, Ms. Chapman's negligence theory fails.

For these reasons, the district court did not err in granting summary judgment to Carmike on Ms. Chapman's second claim.

C.

Ms. Chapman's third claim alleged constructive discharge. She argues that the district court erred in determining the claim was procedurally barred, because she argues that "[i]f an unexhausted ensuing claim is 'reasonably related' to an exhausted claim, the district court should consider it." Aplt. Br. at 22.

The "reasonable relation" theory is no longer good law in cases involving discrete, easily identifiable incidents such as "'termination, failure to promote, denial of transfer, or refusal to hire,'" each of which "'constitutes a separate actionable unlawful employment practice.'" *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-14 (2002)). A plaintiff must timely file an administrative charge in

-20-

order to preserve a claim based on a "discrete discriminatory act[]." *Morgan*, 536 U.S. at 113. We recognize that a constructive discharge may be akin to a hostile environment claim in that a constructive discharge theory generally rests on a series of discriminatory events and incidents. But when the constructive discharge is complete – i.e., when the employee resigns – the discharge is most akin to a wrongful discharge by the employer, which is a discrete and identifiable act. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998) ("Constructive discharge is, indeed, just one form of wrongful discharge."); *Young v. Nat'l Ctr. for Health Servs. Research*, 828 F.2d 235, 238 (4th Cir. 1987) (characterizing a constructive discharge as "a distinct discriminatory act for which there is a distinct cause of action"). Accordingly, we conclude that a claim of constructive discharge requires filing an administrative charge. *See Butler v. Potter*, 345 F. Supp. 2d 844, 853 (E.D. Tenn. 2004).

Ms. Chapman appears to concede that *Martinez* controls here, as she urges the court to overrule it. Aplt. Reply Br. at 3. One panel generally may not overrule the decision of another panel. *United States v. Mitchell*, 518 F.3d 740, 752 n.14 (10th Cir. 2008).

Because Ms. Chapman did not exhaust her administrative remedies, the district court did not err in granting summary judgment to Carmike on her claim for constructive discharge.

-21-

III.

The judgment of the district court is AFFIRMED in part and REVERSED in part. Summary judgment for Carmike on Ms. Chapman's first claim of a hostile work environment, so far as it involves her respondeat superior liability theory of employer liability for the assault, is REVERSED and REMANDED to the district court for further proceedings. Summary judgment for Carmike on all other claims is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge